IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHRISTOPHER SLUSHER,**

    **Plaintiff,**

                                                **Case No. 2:18-cv-570**

    v.                              **Chief Magistrate Judge Elizabeth P. Deavers**

**CHARLES L. READER, SHERIFF,**
*et al.*,

    **Defendants.**

## OPINION AND ORDER

This case arises from criminal charges of child endangerment and other offenses filed against Plaintiff by Defendant Beau Romine. Plaintiff contends that Defendants violated his rights under the Fourth and Fourteenth Amendment to the United States Constitution and maliciously prosecuted him under Ohio law. Defendants deny Plaintiffs' claims. With the consent of the parties (ECF No. 10), 28 U.S.C. § 636(c), this matter is before the Court for consideration of Defendants' Motion to Dismiss (ECF No. 3), Plaintiff's Memorandum in Opposition (ECF No. 5), and Defendants' Reply Memorandum (ECF No. 6). For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**.

**I.**

In 2016, Plaintiff Christopher Slusher's father, Delbert Slusher, challenged Defendant Sheriff Charles Reader, Pike County's incumbent Sheriff. (Complaint, ECF No. 1 at ¶ 10.) Following "an extremely nasty campaign, Delbert Slusher was defeated and Defendant Reader retained the office." (*Id.*) Defendant Reader and Defendant Romine, a Pike County Sheriff's

Deputy ("Defendant Romine"), knew that Plaintiff was actively involved in his father's campaign. (*Id*. at ¶¶ 9, 11.)

On March 7, 2017, Plaintiff stayed overnight at the house of his girlfriend, Daisy Osborne, where she resided with her three children. (*Id*. at ¶ 13.) While Plaintiff was still asleep, Ms. Osborne left the house to go shopping. (*Id*. at ¶ 14.) At approximately 8:00 a.m., while Ms. Osborne was still shopping, Plaintiff awoke to a child crying and found Ms. Osborne's one-and-a-half year old daughter on the floor with scrapes and bruising on her face, having apparently fallen face first out of the crib onto toys on the floor. (*Id*. at ¶¶ 15–16, 26, 31.) Plaintiff picked up the child and called Ms. Osborne about the incident. (*Id*. at ¶ 17.)

Shortly thereafter, Ms. Osborne arrived home, took a picture of the child's head ("the picture"), and sent the picture to her two sisters, one of whom forwarded it to her mother who was a nurse. (*Id*. at ¶ 18.) Ms. Osborne's aunt advised Ms. Osborne to monitor the child for vomiting or unusual behavior because these could be signs of a concussion. (*Id*. at ¶ 19.)

On March 14, 2017, one of Ms. Osborne's sisters advised her that a doctor to whom she had shown the picture wanted to examine the child. (*Id*. at ¶ 20.) When the child was taken to Adena Medical Center, x-rays revealed no fractures and the medical records revealed no sign of child abuse. (*Id*. at ¶¶ 21–22.)

The child's father, who was residing in Las Vegas, Nevada at the time and who also received a copy of the picture from Ms. Osborne's sister, contacted Pike County Children Protective Services ("CPS") and reported a complaint of child abuse. (*Id*. at ¶¶ 23–24.) On March 15, 2017, a CPS investigator came to Ms. Osborne's house to perform a wellness check and interviewed Plaintiff and Ms. Osborne. (*Id*. at ¶ 25.) Ms. Osborne and Plaintiff showed the CPS investigator the picture of the child's bruise and the investigator took her own pictures. (*Id*.

at ¶¶ 31, 33.)

On March 16, 2017, the child's father contacted Pike County Sheriff's Office and spoke to Defendant Romine, a patrol officer who had previously dated Ms. Osborne's sister, describing the picture of his child's bruised face. (*Id*. at ¶¶ 26, 29 –30.) The child's father advised Defendant Romine that he did not believe his child fell out of her crib, that he notified CPS because he believed the bruising looked like a hand, and that Plaintiff was in the residence at the time the child was injured. (*Id*.) Defendant Romine spoke to the CPS investigator and, along with another Sheriff's Deputy, went to Ms. Osborne's house and interviewed both her and Plaintiff, saw the picture of the child's bruised face, and viewed the crib. (*Id*. at ¶¶ 27–29, 31–32.)

On March 29, 2017, the father of the child, who had returned from Las Vegas, and another individual attacked Plaintiff in a parking lot. (*Id*. at ¶ 35.) When Plaintiff tried to call the police, the child's father punched him in the face, broke his nose, and injured his arm when he fell to the ground. (*Id*.) The child's father later obtained security footage of this attack and posted the video on Facebook. (*Id*. at ¶ 43.)

The CPS investigator visited Ms. Osborne's home at least two more times but did not remove the child who had been injured, or any child, from the home. (*Id*. at ¶ 34.) On April 28, 2017, Pike County CPS determined no additional services were required and closed the case, sending a copy to this effect to the Pike County Sheriff's Office. (*Id*. at ¶ 36.)

On May 3, 2017, Defendant Romine filed criminal charges of child endangerment against Plaintiff in Pike County Court ("the state court") and a warrant for Plaintiff's arrest was issued the next day. (*Id*. at ¶¶ 37–38.) The child endangerment charges against Plaintiff were posted on the Pike County Sheriff's Office website and, on May 5, 2017, Defendant Romine posted on his

personal Facebook page these charges, Plaintiff's photo, and the tag line, "SHARE: Man wanted in Pike County for alleged child abuse of a young child." (*Id*. at ¶¶ 39–40.)

When Plaintiff learned of the outstanding warrant, he arranged through his attorney and the prosecutor to drop the warrant and Plaintiff turned himself in on May 8, 2017. (*Id*. at ¶ 44.) On the same day, he was released on a recognizance bond with the conditions that he stay away from Ms. Osborne's child, which effectively prevented Plaintiff from spending time with Ms. Osborne, and to submit to random drug testing. (*Id*. at ¶¶ 45–46.)

In addition, on May 8, 2017, Defendant Romine also filed charges against Plaintiff and Ms. Osborne for assault and obstructing official business. (*Id*. at ¶¶ 48–49.) Ms. Osborne was arrested and placed in a holding cell at the Pike County Jail. (*Id*. at ¶ 50.) While incarcerated, Defendant Romine repeatedly told her that, in order to make it easier on her, she should say that Plaintiff abused her child. (*Id*.) He also told her that he would take her kids away unless she stayed away from Plaintiff. (*Id*.)

After Plaintiff's counsel spoke with the Pike County Prosecutor about the lack of evidence, on June 7, 2017, all charges against Plaintiff were dismissed without prejudice. (*Id*. at ¶ 52.) On the same day, all charges were dismissed against Ms. Osborne. (ECF No. 1 at ¶ 53.) On June 19, 2017, the charges were dismissed without special conditions. (*Id*. at ¶ 54.) As of the date of the filing of the Complaint, no indictment against Plaintiff or Ms. Osborne has been issued. (*Id*. at ¶ 55.)

On June 8, 2018, Plaintiff filed the instant Complaint, naming Defendants Reader and Romine in the individual and official capacities. (ECF No. 1.) Plaintiff alleges that Defendants violated his rights under the Fourth and Fourteenth Amendment to the United States Constitution and maliciously prosecuted him under Ohio law. (*Id*.) Defendants have moved to dismiss

Plaintiffs' claims for failure to state a claim upon which relief can be granted. (ECF No. 3.) Defendants' Motion to Dismiss is ripe for resolution. (ECF Nos. 5, 6, 12.)

## II.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd.*, *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc.*, 491 F. App'x. 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III.

**A.  Statute of Limitations**

Defendants first contend that Plaintiff's claims are barred by the applicable statute of limitations, namely, a one-year statute of limitations for both the federal and state-law claims. (ECF No. 3 at 6–7.) Defendants specifically argue that Plaintiff's Fourth and Fourteenth Amendment claims are premised on his malicious prosecution allegations and that his statute of limitations began to run on June 7, 2017, when the charges against him were dismissed without prejudice. (*Id*. at 6 (citing Complaint, ECF No. 1, at ¶ 52).) Defendants therefore take the position that Plaintiff's claims are untimely because he did not file this action until June 8, 2018, just over one year after the applicable statute of limitations began. (*Id*. at 6–7.)

As it relates to Plaintiffs' federal claims, the statute of limitations applicable to claims arising in Ohio under 42 U.S.C. § 1983 is the two-year statute of limitations found in Ohio

Revised Code § 2305.10. *Brooks v. Skinner*, 139 F. Supp. 3d 869, 881 (S.D. Ohio 2015); *see also Wilson v. City of Dayton*, 14 F. Supp. 3d 900, 905 (S.D. Ohio 2014) (explaining that if "a state has multiple statutes of limitation for personal injury actions, as does Ohio, the proper statute to apply is the general or residual statute for personal injury actions[,]" which, in Ohio, is two years under Ohio Revised Code § 2305.10). Here, even accepting Defendants' assertion that the statute of limitations began to run on June 7, 2017, when the charges against Plaintiff were dismissed without prejudice, the action was filed on June 8, 2018, well before the two-year statute of limitations expired. Accordingly, the applicable statute of limitations does not bar Plaintiff's claims arising under Section 1983.

As to his state-law malicious prosecution claim, the parties agree that a one-year statute of limitations applies. (ECF No. 3 at 6; ECF No. 5 at PAGEID # 49); *see also Ross v. Music*, No. 2:13-cv-249 2013, WL 3902405, at *11 (S.D. Ohio July 29, 2013) (finding that common law claim for malicious prosecution was barred by the applicable one-year statute of limitations under Ohio Revised Code § 2305.11(A)). An action for malicious prosecution under Ohio law "shall be commenced within one year after the cause of action accrued[.]" Ohio Rev. Code § 2305.11(A). "[A] cause of action for malicious prosecution does not accrue until the underlying criminal proceeding has been terminated in the plaintiff's favor." *Hamilton v. Best Buy*, No. 19001, 2002 WL 242542, at *2 (Ohio Ct. App. Feb. 15, 2002) (citations omitted).

Here, the Complaint alleges that "[o]n June 7, 2017, all charges against Mr. Slusher were dismissed without prejudice." (ECF No. 1 at ¶ 52.) Defendants argue that because Plaintiff waited until June 8, 2018, to file this action, the one-year statue of limitations bars his state-law claim of malicious prosecution. (ECF No. 3 at 6–7.) In response, Plaintiff contends that this cause of action did not accrue on June 7, 2017, because the charges were dismissed without

7

prejudice and to be submitted to the grand jury.  (ECF No. 5 at PAGEID ## 50–52 (citing ECF No. 5-1, copies of state court docket attached thereto).)  Plaintiff also points to his allegations in the Complaint that "[o]n June 19, 2017, the charges were dismissed without special conditions" and that "[t]o date, no indictment against either Mr. Slusher or Ms. Osborne has been issued." (*Id*. at PAGEID # 50 (citing ECF No. 1 at ¶¶ 54–55).)  Defendants do not address these arguments in their reply memorandum.  (*See* ECF No. 6.)

As a preliminary matter, by attaching the state court docket to his memorandum in opposition (*see* ECF Nos. 5, 5-1), Plaintiff implicitly asks the Court to take judicial notice of that docket.  "Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment."  *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010); *see also Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (stating that, on a motion to dismiss, a court "may take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").  Here, as previously discussed, Plaintiff has referred to the state court proceedings in the Complaint (*see* ECF No. 1 at ¶¶ 37–38, 44–55) and Defendants have not opposed, or even addressed the propriety of, the Court taking judicial notice of the state court docket.  Accordingly, based on the present record, the Court concludes that it can take judicial notice of the state court proceedings and docket without converting Defendants' Motion to Dismiss into a motion for summary judgment.  *See id.*; *see also Gonzales v. City of Fostoria*, No. 3:13-cv-796, 2014 WL 99114, at *7 (N.D. Ohio Jan. 9, 2014) (taking judicial notice of municipal court's docket sheets that establish that the plaintiff pleaded no contest and was subsequently found guilty and that consideration of the state court

decision and docket sheets did "not convert the motion to dismiss to a motion for summary judgment"); *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 454–55 (N.D. Ohio 2012) (finding that a court may take judicial notice of another court's docket where, *inter alia*, the plaintiff referred to or attached the public record to the complaint).

The Complaint and the state court docket reflect that on June 7, 2017, the case against Plaintiff was dismissed without prejudice on special conditions and to be presented to the grand jury. (ECF No. 1 at ¶¶ 52, 54; ECF No. 5-1 at PAGEID ## 64–66.) On June 19, 2017, the case was dismissed. (ECF No. 5-1 at PAGEID # 64.) Based on this record, the Court cannot conclude at this time that the underlying criminal proceeding was terminated in Plaintiff's favor as of June 7, 2017, as the proceeding was terminated without prejudice, that is, still subject to submission to and consideration by the grand jury. *See Mann v. Genoa Twp.*, No. 01CAE03011, 2002 WL 221112, at *4 (Ohio Ct. App. Feb. 11, 2002) ("In the matter sub judice, the criminal prosecution was dismissed without prejudice and subject to representation to the grand jury. We find there has been no 'termination of the prosecution in favor of the accused' which indicates the accused is innocent."). Having so concluded, the one-year statute of limitations does not bar Plaintiff's state-law malicious prosecution claim. *Id.*; *see also* Ohio Rev. Code § 2305.11(A); *Hamilton*, 2002 WL 242542, at *2.[1] Accordingly, as it relates to the statute of limitations, Defedants' Motion to Dismiss is **DENIED**.

**B.     Claims Against Defendants in Their Individual Capacities**

Defendants next argue that the Court should dismiss the claims against Defendants in

---

[1] The Court addresses only the parties' arguments regarding the statute of limitations raised in the briefing on the Motion to Dismiss. Accordingly, in finding that the underlying criminal state action did not terminate in Plaintiff's favor as of June 7, 2017, the Court expresses no opinion at this time as to exactly when the underlying criminal proceeding may be terminated in Plaintiff's favor. *Cf. Mann*, 2002 WL 221112, at *4.

their individual capacities. (ECF No. 3 at 7–8.) Defendants contend that claims against public officials in their official and individual capacities are distinct and that the body of the Complaint fails to set forth any allegation against Defendants in their individual capacities, instead basing the Complaint on alleged actions Defendants took in their official capacities. (*Id*.) Defendants therefore argue that the Court should dismiss the individual capacity claims as "Plaintiff cannot point to any action by Defendants Reader and Romine, in their individual capacities, that supports Plaintiff's claims." (*Id*. at 8.)

Defendants' argument is not well taken. As Defendants acknowledge (*id*. at 7), Plaintiff has named them in their individual and official capacities in the caption of the Complaint. (ECF No. 1 at 1.) The Court finds that this allegation is sufficient to apply to all of the alleged actions taken by Defendants and to put the Defendants on notice that they are named in both their individual and official capacities. *See Moore v. State of Tennessee*, No. 3:03-CV-559, 2005 WL 1668365, at *2 n.2 (E.D. Tenn. July 18, 2005) (considering, on a motion to dismiss, claims brought against a defendant in both capacities where the caption names the defendant in both her official and individual capacities); *Dvorak v. Wright State Univ*., No. C-3-96-109, 1997 WL 1764779, at *1 n.1 (S.D. Ohio Sept. 3, 1997) (same); *see also Ohio Police & Fire Pension Fund*, 700 F.3d at 835 (stating that, at the motion to dismiss stage, a court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff). While Defendants cite to *Bender v. Williamsport Area School District*, 475 U.S. 534, 543 (1986) to support their contention that the instant Complaint asserts only official capacity claims against them, *Bender* is inapposite. In that case, the United States Supreme Court considered the complaint and "the record on which the District Court's judgment was based" at the summary judgment stage. *See id*. Here, conversely, the Court

their individual capacities. (ECF No. 3 at 7–8.) Defendants contend that claims against public officials in their official and individual capacities are distinct and that the body of the Complaint fails to set forth any allegation against Defendants in their individual capacities, instead basing the Complaint on alleged actions Defendants took in their official capacities. (*Id*.) Defendants therefore argue that the Court should dismiss the individual capacity claims as "Plaintiff cannot point to any action by Defendants Reader and Romine, in their individual capacities, that supports Plaintiff's claims." (*Id*. at 8.)

Defendants' argument is not well taken. As Defendants acknowledge (*id*. at 7), Plaintiff has named them in their individual and official capacities in the caption of the Complaint. (ECF No. 1 at 1.) The Court finds that this allegation is sufficient to apply to all of the alleged actions taken by Defendants and to put the Defendants on notice that they are named in both their individual and official capacities. *See Moore v. State of Tennessee*, No. 3:03-CV-559, 2005 WL 1668365, at *2 n.2 (E.D. Tenn. July 18, 2005) (considering, on a motion to dismiss, claims brought against a defendant in both capacities where the caption names the defendant in both her official and individual capacities); *Dvorak v. Wright State Univ*., No. C-3-96-109, 1997 WL 1764779, at *1 n.1 (S.D. Ohio Sept. 3, 1997) (same); *see also Ohio Police & Fire Pension Fund*, 700 F.3d at 835 (stating that, at the motion to dismiss stage, a court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff). While Defendants cite to *Bender v. Williamsport Area School District*, 475 U.S. 534, 543 (1986) to support their contention that the instant Complaint asserts only official capacity claims against them, *Bender* is inapposite. In that case, the United States Supreme Court considered the complaint and "the record on which the District Court's judgment was based" at the summary judgment stage. *See id*. Here, conversely, the Court

considers the sufficiency of the Complaint in a light most favorable to Plaintiff. *Ohio Police & Fire Pension Fund*, 700 F.3d at 835; *see also Thomas v. Briggs*, No. 15-10210, 2018 WL 2002142, at *2 (E.D. Mich. Apr. 30, 2018) (finding inapplicable party's cited case addressing a motion for summary judgment where the instant case involved a Rule 12(c) motion, which "is subject to the same standard as a Rule 12(b)(6) motion" and "which is a completely different standard" than that under summary judgment); *United States v. Clinkscale*, No. 4:12CV0080, 2013 WL 139806, at *1 (N.D. Ohio Jan. 10, 2013) ("The legal standard applicable to a motion to dismiss and the legal standard applicable to a motion for summary judgment are decidedly different."). Notably, Defendants rely on only the allegations in the Complaint, which the Court has already found adequate, to support their assertion that Plaintiff has failed to state a claim as against them in their individual capacities. (*See id.* at 7–8.) For all these reasons, as it relates to the sufficiency of Plaintiff's naming Defendants in their individual capacities in the caption of the Complaint, Defendants' Motion to Dismiss is **DENIED**.

C.   **Federal Claims Based On the Substantive Due Process Clause of the Fourteenth Amendment**

Plaintiff alleges in the Complaint that Defendants "have committed malicious prosecution in violation of the Due Process Clause of the Fourteenth Amendment and the Fourth Amendment incorporated therein." (ECF No. 1 at ¶ 63.) Defendants move to dismiss Plaintiff's malicious prosecution claims to the extent they are based on alleged violations of the Fourteenth Amendment, arguing that the Fourteenth Amendment's Due Process Clause cannot served as a basis for malicious prosecution claim under Section 1983. (ECF No. 3 at 9–10.) Plaintiff, however, represents that he has not asserted a separate claim based on the Substantive Due Process Clause of the Fourteenth Amendment. He explains that he invokes the Fourteenth Amendment because the Fourth Amendment is enforceable against the States through the

Fourteenth Amendment. (ECF No. 5 at PAGEID ## 52–53.) Accordingly, as it relates to Defendants' argument in this regard, the Motion to Dismiss is **DENIED AS MOOT**.

D.    **Federal Claims Against Defendants in Their Official Capacities**

Defendants contend that the Complaint fails to state a claim upon which relief can be granted because Section 1983 imposes liability on "persons" and "states and state employees sued in their official capacities [a]re not 'persons' under [Section] 1983, and therefore [can]not be held liable for money damages." (ECF No. 3 at 8 (citations omitted).) Defendants argue that the Court should therefore dismiss the federal claims against them in their official capacities because Plaintiff's Section 1983 claims are not cognizable claims. (*Id.*) Plaintiff, however, points out that Defendants are a county Sheriff and county Sheriff's Deputy, not state employees or instrumentalities and therefore are proper parties. (ECF No. 5 at PAGEID ## 39, 53–54.) In reply, Defendants deny that Plaintiff's arguments are "valid," but provide no reason or authority to support their position. (ECF No. 6 at 3.) Instead, Defendants advance a new argument that Plaintiff has failed to allege policy or custom that was the moving force behind an unconstitutional violation under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (ECF No. 6 at 3–5.) However, the Court will not consider new arguments raised for the first time in a reply memorandum. *Stillwagon v. City of Delaware*, 175 F.Supp.3d 874, 890 (S.D. Ohio 2016) ("The Court can disregard arguments that are made for the first time in a reply brief."); *cf. ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 584 (6th Cir. June 1, 2018) ("It is black-letter appellate practice that a party cannot raise arguments for the first time in a reply brief."). Accordingly, as it relates to these official capacity arguments, the Motion to Dismiss is **DENIED**.

E.   **Merits of Federal Claims Against Defendants**

Defendants argue that Plaintiff has failed to allege the elements necessary to succeed on his malicious prosecution claim premised on a violation of the Fourth Amendment. (ECF No. 3 at 10–12.) To prevail on such a claim, a plaintiff must show four elements. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). "First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute.'" *Id.* at 308 (quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007). "Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution[.]" *Id.* "Third, the plaintiff must show that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Id.* at 308–09 (citations omitted). "Fourth, the criminal proceeding must have been resolved in the plaintiff's favor." *Id.* at 309.

Here, Defendants concede that Plaintiff has sufficiently alleged the second and fourth elements as to both Defendants for purposes of their Motion to Dismiss. (ECF No. 3 at 11.)[2] Defendants argue, however, that Plaintiff has not sufficiently alleged the first element as to Defendant Reader, namely, that Defendant Reader made, influenced, or participated in the decision to prosecute Plaintiff. (*Id.*) In support, Defendants note that the Complaint simply alleges that Defendant Romine—not Defendant Reader—filed criminal charges against Plaintiff. (*Id.* (citing ECF No. 1 at ¶¶ 37, 48).)

---

[2] Accordingly, the Court does not address these elements and expresses no opinion at this time as to whether Plaintiff has met, or can ultimately establish, these elements.

Defendants' argument is not well taken. While it is true that the Complaint alleges that Defendant Romine was the person who filed the criminal charges (ECF No. 1 at ¶¶ 37, 48), Plaintiff also alleges, *inter alia*, that Defendant Romine acted at the direction of Defendant Reader (*id*. at ¶ 1), that Defendant Reader "wanted to humiliate and settle a political score with Mr. Slusher and his father and Defendants acted in concert to bring the charges" (*id*. at ¶ 57), that Defendant Romine shared with Defendant Reader information and developments described in the Complaint (*id*. at ¶ 58). Construing these allegations in a light most favorable to Plaintiff, the Court finds these allegations sufficient at this stage to allege that Defendant Reader made, influenced, or participated in the decision to prosecute Plaintiff. *See Sykes*, 625 F.3d at 308; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ohio Police & Fire Pension Fund*, 700 F.3d at 835.

Defendants also contend that Plaintiff has failed to sufficiently allege the third element, *i.e.*, a deprivation of liberty as a consequence of a legal proceeding. (ECF No. 3 at 12; ECF No. 6 at 1–3.) Plaintiff specifically alleges as follows:

> 37. On May 3, 2018, despite knowing that Pike County Children Protective Services had closed the case, Defendant Romine filed criminal charges of child endangerment against Mr. Slusher in the Pike County Court.
>
> 38. The following day, a warrant was issued for Ms. Slusher's arrest. . . .
>
> 44. Around this time, Mr. Slusher learned that he had an outstanding warrant. He contacted his attorney, who in turn contacted the prosecutor. Mr. Slusher's attorney and the prosecutor arranged that the warrants would be dropped and that Mr. Slusher would turn himself in on May 8, 2017.
>
> 45. On May 8, 2017, Mr. Slusher turned himself in at the Pike County courthouse. He was then released on a recognizance bond. As a condition of his bond, Mr. Slusher was ordered to stay away from Ms. Osborne's child and to submit to random drug testing.
>
> 46. Because Ms. Osborne was the custodial parent of her infant child, the stay away order effectively prevented Mr. Slusher from spending time with Ms. Osborne.

> 47. Mr. Slusher had been dating Ms. Osborne, formed a bond with her children, regularly both visited her residence and remained there overnight, and lost his ability to continue those relationships and activities while on bond. . . .
>
> 63. By securing his prosecution without probable cause in order to retaliate against him for his and his father's campaign activities, which prosecution ended in dismissal of the charges against him for lack of evidence after the prosecution deprived him of liberty in the forms of his freedom to travel where he wanted and without fear of a random drug test, reputation, personal safety, romantic relationship, and bonding with children, Defendants have committed malicious prosecution in violation of the Due Process Clause of the Fourteenth Amendment and the Fourth Amendment incorporated therein.

(ECF No. 1 at ¶¶ 37–38, 44–47, 63.)

Defendants contend that none of these allegations establish a deprivation of liberty. (ECF No. 3 at 12 (citing *Noonan v. Cnty. of Oakland*, 683 F. App'x 455, 462–63 (6th Cir. March 24, 2017) (holding plaintiff did not suffer a deprivation of liberty where he "was never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions"); *Cummin v. North*, No. 2:15-cv-1043, 2017 WL 4386809 at * 5 (S.D. Ohio Sept. 29, 2017) (finding no deprivation of liberty where plaintiff was not handcuffed, arrested, jailed, or taken into custody); *Hopkins v. Sellers*, No. 1:09–cv–304, 2011 WL 2173859, at *9–10 (E.D. Tenn. June 2, 2011) (finding no deprivation of liberty where the plaintiff was never arrested, jailed, detained, required to post bond, or placed under travel restrictions); *Briner v. City of Ontario*, No. 1:07CV129, 2011 WL 866464, at *4 (N.D. Ohio Mar. 9, 2011)); ECF No. 6 at 1–3.) Plaintiff disagrees, distinguishing these cases and pointing out that a travel restriction was imposed on him. (ECF No. 5 at PAGEID ## 57–58; ECF No. 12.)

Plaintiff's arguments are well taken. As a preliminary matter, Defendants' cited cases were resolved at the summary judgment stage, not on a motion to dismiss, each of which presents completely different standards. *Thomas*, 2018 WL 2002142, at *2; *Clinkscale*, 2013

15

WL 139806, at *1.  Moreover, unlike the plaintiffs in *Noonan*, *Cummin*, and *Hopkins* who suffered no travel restrictions, the instant Plaintiff has specifically alleged that he was ordered to stay away from Ms. Osborne's child, which effectively prevented him from going to Ms. Osborne's house and spending time with her (ECF No. 1 at ¶¶ 45–47, 63).  *See Noonan*, 683 F. App'x at 463 ("Noonan was never arrested or incarcerated, required to post bail or bond, or subjected to *any* travel restrictions.") (emphasis added); *Cummin v. North*, 731 F. App'x 465, 472 (6th Cir. 2018) ("Cummin faced no travel restrictions[.]"); *Hopkins*, 2011 WL 2173859, at *9 ("Plaintiff was never arrested, never jailed, never detained, never required to post bond, and *never placed under travel restrictions*.") (emphasis added).  While Defendants contend that Plaintiff cites to no caselaw establishing that being ordered to stay away from a girlfriend's child constitutes a travel restriction (ECF No. 6 at 2), the Court finds that, at this stage, Plaintiff's allegations sufficiently allege that he suffered a deprivation of liberty when he was ordered to stay away from Ms. Osborne's child.  *Cf. Hopkins*, 2011 WL 2173859, at *9; *Garner Prop. & Mgmt. LLC v. City of Inkster*, No. 17-cv-13960, 2018 WL 3870056, at *15 (E.D. Mich. Aug. 15, 2018) (distinguishing *Noonan* and other cases decided at the summary judgment stage and finding the instant case, on a motion to dismiss, was "a close call given the borderline generality of the allegations of Plaintiffs' Complaint regarding the deprivations they suffered" but noting that "it would not dismiss the claim on this separate and independent basis at this juncture" if it were not already granting the motion o dismiss on other grounds); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ohio Police & Fire Pension Fund*, 700 F.3d at 835.  For all these reasons, to the extent Defendants contend that Plaintiff has failed to state a claim for federal malicious prosecution, the Motion to Dismiss is **DENIED**.  Having so determined, the Court expresses no

conclusive finding as to whether Plaintiff will ultimately prevail on the merits of his federal claims.

**F.     State-Law Malicious Prosecution Claims Against Defendants in Their Official Capacities**

Defendants also contend that they are immune from liability in their official capacities from Plaintiff's state-law malicious prosecution claim pursuant to Ohio Revised Code § 2744.02, which governs the liability of political subdivisions and their employees. (ECF No. 3 at 13–14.) Plaintiff concedes that they are immune in this respect. (ECF No. 5 at PAGEID # 58.) Accordingly, as it relates to Plaintiff's state-law malicious prosecution claims against Defendants in their official capacities, the Motion to Dismiss is **GRANTED**.

**G.     State-Law Malicious Prosecution Claims Against Defendants in Their Individual Capacities**

Finally, Defendants contend that they are also immune from liability in their individual capacities as to Plaintiff's state-law malicious prosecution claim under Ohio Revised Code § 2744.03. (ECF No. 3 at 14–15; ECF No. 6 at 5–6.) That section provides that immunity does not attach when an "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" Ohio Rev. Code § 2744.03(A)(6)(b). According to Defendants, Plaintiff has not alleged that either Defendant acted in any of these ways and that his conclusory allegations are insufficient to withstand their Motion to Dismiss. (ECF No. 3 at 14–15; ECF No. 6 at 5–6.) Plaintiffs disagree, arguing that they have sufficiently alleged that Defendants acted in the requisite manner under Section 2744.03(A)(6)(B). (ECF No. 5 at PAGEID # 58–60.)

Plaintiff's arguments are well taken. As Plaintiff explains, "'[m]alice' is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously,

17

through conduct which is unlawful or unjustified." *Cook v. City of Cincinnati*, 103 Ohio App. 3d 80, 90 (1995). "'Bad faith' involves dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Id*. at 90–91. "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. City of Massillon*, 134 Ohio St. 3d 380, 388 (2012). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id*.

Here, Plaintiff has alleged, *inter alia*, that Defendant Romine, acting at Defendant Reader's direction, maliciously prosecuted him as an act of revenge against his father (ECF No. 1 at ¶ 1), no probable cause existed for any criminal charges against Plaintiff (*id*. at ¶ 56), that that Defendant Reader "wanted to humiliate and settle a political score with Mr. Slusher and his father and Defendants acted in concert to bring the charges" (*id*. at ¶ 57), and that Defendant Romine shared with Defendant Reader information and developments described in the Complaint (*id*. at ¶ 58). The Court finds these factual allegations sufficient at this stage to allege that Defendants' acts were with malicious purpose, in bad faith, or in a wanton or reckless manner. *Ashcroft*, 556 U.S. at 678; *Ohio Police & Fire Pension Fund*, 700 F.3d at 835; *Anderson*, 134 Ohio St. 3d at 388; *Cook*, 103 Ohio App. 3d at 90. For all these reasons, to the extent Defendant contend that they are immune from the state-law malicious prosecution claims in their individual capacities pursuant to Ohio Revised Code § 2744.03, the Motion to Dismiss is **DENIED**. Having so determined, the Court expresses no conclusive finding as to whether

Plaintiff may ultimately prevail on the merits of his state-law malicious prosecution claims against Defendants in their individual capacities.

## IV.

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 3) is **GRANTED IN PART AND DENIED IN PART** consistent with the foregoing. Specifically, the Motion to Dismiss is **GRANTED** as to Plaintiff's state-law malicious prosecution claim against Defendants in their official capacities and **DENIED** in all other respects.

**IT IS SO ORDERED.**

Date: March 27, 2019                              /s/ *Elizabeth A. Preston Deavers*
                                                  ELIZABETH A. PRESTON DEAVERS
                                                  CHIEF UNITED STATES MAGISTRATE JUDGE